(88 Misc. Rep. 510)

NORTHERN BANK OF NEW YORK et al. v. WASHINGTON SAV-
INGS BANK.

(Supreme Court, Special Term, New York County.   December 2, 1914.)

MORTGAGES (§ 244*)—ASSIGNMENTS—PRIORITIES.

The officers of the N. Bank organized a realty company to hold real
property formerly held by the bank, on which the bank took mortgages
from the realty company.  To facilitate sales of the property, it satisfied
the mortgages of record in consideration of the realty company's agree-
ment to turn over the cash realized on sales, together with assignments
of mortgages given by the purchasers.  Such mortgages were not assigned
to the bank until just before the superintendent of banks took the bank
in charge for the purpose of liquidation.  Through the influence of R.,
who controlled all of the corporations, a savings bank advanced money
on behalf of the realty company, which was to be secured by assign-
ments of the same mortgages.  Though the officers of the N. Bank knew
of the savings bank's interest, and that its creditors and depositors were
being misled into believing that it held the mortgages free from any claim
as collateral for loans to its officers, they did nothing to reduce the mort-
gages to their bank's possession, except to request a delivery by the bank's
attorneys, without any demand on the officer of the realty company, who
had possession of the mortgages.  *Held* that, as between the depositors
and creditors of the two banks, both of which were insolvent, the sav-
ings bank was entitled to the mortgages, under the rule that, as between
two innocent parties, a loss must fall upon the party whose negligence or
acts permitted it to occur, especially as the N. Bank acted in violation of
Banking Law (Consol. Laws, c. 2) § 66, subd. 4, authorizing banks to pur-
chase, hold, and convey real property for the purposes therein enumerated,
and providing that no such corporation shall purchase, hold, or convey
real property in any other case or for any other purpose, and that all
conveyances of real property shall be made to it directly and by name.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 633–655; Dec.
Dig. § 244.*]

Action by the Northern Bank of New York and another against the
Washington Savings Bank.  Complaint dismissed, and judgment ren-
dered for defendant on its counterclaim.

Breed, Abbott & Morgan, of New York City, for plaintiffs.
Carmody, Blauvelt & Kellogg, of New York City, for defendant.

GAVEGAN, J.   The action is to cancel of record the assignments
of three mortgages which formerly belonged to the Maclay Avenue
Realty Company and were assigned to the defendant and duly re-
corded.   Prior to May 13, 1909, the plaintiff, Northern Bank, was the
owner of three mortgages aggregating $195,000, which covered certain
property of its coplaintiff, the Maclay Avenue Realty Company, a
corporation formed by the officers of the Northern Bank for the sole
purpose of holding real property formerly held by the Northern Bank.
In addition to the mortgages above referred to, the Northern Bank
advanced to the Maclay Avenue Realty Company, $97,845.27.   For
the purpose of facilitating the sale of the property of the Maclay Ave-
nue Realty Company, the Northern Bank canceled and satisfied of
record the mortgages it held.   It received no consideration for dis-
charging the mortgages, and now claims that an agreement was made

with the Maclay Avenue Realty Company, by which the Maclay Avenue Realty Company was to turn over to it the cash realized on the sale of the Maclay Realty Company's property, together with the assignment of any mortgages given by the purchasers of the property to secure the purchase price.. Pursuant to this agreement there was turned over to the Northern Bank the sum of $50,000, realized on the sale of the property; but no assignments of the mortgages above referred to were in fact made to it until just prior to the time when the Northern Bank was taken in charge by the superintendent of banks for the purpose of liquidation. Meanwhile, through the influence and direction of one Robin, who was its president and the principal in all the companies concerned in the subject of this litigation, the defendant was caused to make payments to the Bankers' Realty & Trust Company, in behalf of the Maclay Avenue Realty Company, which payments were to be secured by assignments of the mortgages and contracts of the Maclay Avenue Realty Company. It appears, therefore, that both banking institutions, acting under the corrupt influence of Robin, parted with considerable sums of money upon the same security, and while the two banking institutions are ostensibly interested, the action is in reality a controversy between the creditors of each to recover for their separate benefit the proceeds of the mortgages which have been collected by the superintendent of banks and deposited by him to abide the result of this action.

The principle which I shall apply in the controversy is that, between two innocent parties, the burden must fall upon the party whose negligence or acts permitted the loss to occur. The Maclay Avenue Realty Company was merely a creature and dummy of the Northern Bank, holding real property for the benefit of the bank, and thereby aiding said bank in an indirect violation of subdivision 4 of section 66 of the Banking Law. After the sale of the Maclay Avenue Realty Company's property, the mortgages held by it were delivered by it to one Morris, who was an officer of both the Northern Bank and the Maclay Avenue Realty Company. No demand was made on either the attorneys for the Northern Bank or Morris, nor was anything done to reduce the mortgages to the plaintiffs' possession, except that the officer in charge of the real property had from time to time requested its attorneys to deliver the mortgages to it. Although the officers of the Northern Bank knew of defendant's interest in the mortgages in question, and knew that defendant's creditors and depositors were being misled into believing that defendant held said mortgages free from any claim as collateral for loans to its officers, they made no effort to assert the claim until it was too late. Were the parties to this action private institutions, and the public not made to suffer by the fraud of their agents and officers, the court would not lend its aid to either party; but where, as in this case, small depositors and the life savings of poor individuals are matched against the deposits of business men, who are ordinarily better able to suffer a loss, the discretion of the court must be exercised to apportion the blame. The evidence convinces me that the greater blame must be placed upon the plaintiffs, who not only violated the banking laws of the state,

151 N.Y.S.—20

but in order to make an unlawful profit lulled the depositors and creditors of the defendant savings bank into a sense of security by appearing to have released all claim to the mortgages in question. The loss, therefore, must fall upon the plaintiffs.

I have reached the foregoing conclusion on the issue as presented, not unmindful of the fact that the state superintendent of banks, although appearing by different attorneys, is in effect both plaintiff and defendant in this case, since both banks had been taken in charge by him for the purpose of liquidation before the action was commenced. While the interests of justice and of the creditors and depositors of the parties require that the controversy be tried on the issues as presented by the pleadings in this particular case, which has undoubtedly been prosecuted and defended with the utmost zeal and good faith on the part of the attorneys who appeared, I am unable to find any direct authority in point which would warrant the bringing of such a suit where one person acting in a representative capacity or otherwise is in a position to control the pleadings and consequently the issues which are to be tried. I therefore recommend that proper legislation be enacted which shall provide for some such measure as the intervention of the Attorney General in future cases where the court is called upon to determine issues between two or more banking institutions whose affairs have been taken in charge by the state superintendent of banks for the purpose of liquidation.

The complaint must be dismissed, and judgment awarded defendant on its counterclaim. No costs. Findings passed upon.